FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
02/14/2022
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Bayardo Reno Sandy

*Plaintiff*

v.

The State of Colorado; a state of the U.S. Union,

Colorado Attorney General Phil Weiser; in his official capacity,

The United States of America; a sovereign nation,

United States Attorney General Merrick Brian Garland; in his official capacity,

Saguache County; a Colorado County,

Saguache County Sheriff Dan Warwick; in his official capacity,

Judge Barbara A.  Zollars; in her official capacity,

Judge Kimberly Cortez-Rodriguez; in her official capacity,

Judge Crista Newmyer-Olsen; in her official capacity,

Judge Amanda Claire Hopkins; in her official capacity,

Esq. Anna Nikole Ulrich No. 33367; in her former capacity as a Saguache Judge,

Moeller Graf, P.C.; a corporation for profit,

Esq. Kyle C. Webert No. 43739; in his employee capacity,

Allen & Curry, P.C.; a corporation for profit,

Esq. Theodore Allan Wells No. 45909; in his employee capacity,

The Baca Grande Property Owners Association; a nonprofit corporation,

Mr. Stephen C. Dossenback; in his individual and former official capacity,

Ms. Ayla Danielle Hoevers; in her individual and former official capacity,

Ms. Jane E. Brooks, a.k.a Sugandha; in her individual and official capacity,

Mr. Dale William Halley, in his individual and official capacity,

Mr. Diego Martinez; in his individual and official capacity,

Mr. James Vanderpool; in his individual and official capacity,

Ms. Connie M. Estrada; in her individual and in official capacity,

Mr. Chris William Whywbrow; in his individual and official capacity.

*Defendants*

A.  PLAINTIFF INFORMATION

Bayardo Reno Sandy

609 Heatherbrea Road, Crestone Colorado 89147 (physical)

P.O. Box 81922 Las Vegas NV 89180 (Mailing)

Phone: 310-929-0321  —  baysandy@yahoo.com


B.  DEFENDANTS INFORMATION

Defendant 1:       The State of Colorado

Defendant 2:       Colorado Attorney General Phil Weiser;

Office   of   the   Colorado   Attorney   General

Ralph L. Carr Colorado Judicial Center

1300 Broadway, 10th Floor

Denver, CO 80203

Phone: 720-508-6000      Email: not available


Defendant 3:       The United States of America

Defendant 4:       United States Attorney General Merrick Brian Garland

U.S. Department of Justice Civil Rights Division

950 Pennsylvania Avenue, NW

Washington, D.C. 20530-0001

Phone: (202) 514-3847      Email: not available


Defendant 5:       Saguache County

505 3rd Street

P.O. Box 100

Saguache, CO 81149

Phone: 719-655-2231  Email: wmaez@saguachecounty-co.gov


Defendant 6:       Saguache County Sheriff Dan Warwick;

530 5th Street

PO Box 265

Saguache, CO 81149

Phone: 719.655.2544        Email: not available

Defendant 7:        Judge Barbara A. Zollars

925 Sixth Street

Room 204

Del Norte CO 81132

Phone: 719-657-3394        Email: not available

Defendant 8:        Judge Kimberly Cortez-Rodriguez

6683 County Road 13

P.O. Box 128

Conejos CO 81129

Phone: 719-376-5465        Email: not available

Defendant 9:        Judge Crista Newmyer-Olsen

8955 Independence Way

Alamosa CO 81101

Phone: 719-589-4996        Email: not available

Defendant 10:        Judge Amanda Claire Hopkins

925 6th Street

Room #204

Del Norte CO 81132

Phone: 719-657-3394        Email: not available

Defendant 11:        Esq. Anna Nikole Ulrich (No. 33367)

P.O. Box 1043

Salida, CO   81201

Phone: 719-849-8976        Email: Not Available

Defendant 12:        Moeller Graf, P.C.

Defendant 13:        Esq. Kyle C. Webert No. 43739

385 Inverness Pkwy # 200,

Englewood, CO 80112

Phone: 720-279-2568        Email: cwebert@moellergraf.com


Defendant 14:        Allen & Curry, P.C.

Defendant 15:        Esq. Theodore Allan Wells No. 45909

1125 17th St #1275

Denver, CO 80202

Phone: 303 955-6185        Email: twells@allen-curry.com


Defendant 16:        Mr. Stephen C. Dossenback;

104 Swallowtail Ct,

Little River, SC 29566

Phone: 719-588-9626        Email: sdossenback@gmail.com


Defendant 17:        Ayla Danielle Hoevers

2416 Tremont St., Apt 37

Colorado Springs, CO 80907  (Phone and email not available)


Defendant 18:        The Baca Grande Property Owners Association

Defendant 19:        Ms. Jane E. Brooks, a.k.a Sugandha

Defendant 20:        Mr. Dale William Halley

Defendant 21:        Mr. Diego Martinez

Defendant 22:        Mr. James Vanderpool

Defendant 23:        Ms. Connie M. Estrada

Defendant 24:        Mr. Chris William Whywbrow

P.O.Box 237

Crestone, CO 81131

Phone : 719-256-4171        Email: info@bacapoa.org

## II. JURISDICTION AND VENUE

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1332, 1337, 1343 and 1346.  This action is authorized and instituted pursuant to Title 42 U.S.C. § 3602(g), 3602(h)(2), § 3605, § 3613 § and 3617, of the Civil Rights Act of 1991, 42 U.S.C. §1981, §1983; and by the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1988.

Venue in this Court is proper pursuant to 28 U.S.C. § 1391(c) because the Plaintiff for alienation and fearing for his safety become of some of the Defendants to must take residency at his former home of Florida.

Diversity jurisdiction also stems to the fact that Defendant Stephen Craig Dossenback is no longer a resident of the State of Colorado, now is a resident of the town of Little River, South Carolina since the purchase of his home on 07/17/2021, according to listings at Zillow.com.

## Contents

II. JURISDICTION AND VENUE .......................................................................................... v

I.    COMPLAINT ........................................................................................... 1

II.   Colorado and Association Quid Pro Quo.................................................... 1

III.  Colorado's Cover-Up ................................................................................. 2

IV.   Another Coercive Pattern—the Rent-A-Cop.............................................. 4

V.    Premeditated Arson of Jarvis' home by the Association............................. 5

VI.   The Evidence shows the Association as a Criminal Organization ............................. 7

VII.  State of Colorado's Series of Violations of Civil Rights ............................. 8

VIII. Complaint's Summary ............................................................................... 11

IX.   STATEMENTS OF CLAIMS FOR RELIEF................................................. 12

X.     CLAIMS FOR RELIEF ............................................................................................. 12

XI.    IN FURTHER CLAIMS FOR RELIEF ..................................................................... 22

XII.   IN FURTHER CLAIMS FOR RELIEF ..................................................................... 23

XIII.  IN FURTHER CLAIMS FOR RELIEF ..................................................................... 30

XIV.   Compensatory and Punitive Damages ..................................................................... 32

XV.    Prayer for Relief ..................................................................................................... 33

XVI.   Demand For a Jury Trial.......................................................................................... 34

Certificate of Compliance in Suing Governments............................................................. 35

Statement of Related Cases ............................................................................................. 36

Certificate of Compliance ................................................................................................. 37

Cases

*Arguelles v. Ridgeway, 827 P.2d 553 (Colo. App. 1991)*...................................................... 19

*Arnal v. Aspen Case 1:15-cv-01044-WYD-MJW]*............................................................15, 35

*Baca Grande POA v. Jarvis Case 2020CA1254* ..................................................................... 6

Baca Grande POA v. Jeffrey Winsett, Saguache Case 2017C30004 .................................. 21

Baca Grande POA v. Robert DeMers Case 2018C30034 ................................................... 21

*Faris v. Rothenberg, 648 P.2d 1089 (Colo. 1982).* ............................................................... 23

*Fletcher v. Peck, 10 U.S. 87 (1810).* .................................................................................... 16

*Mullane v. Central Hanover Bank (1950)*............................................................................... 18

*Sandy v. Baca Grande POA 18CV02572* .....................................................................4, 7, 35

*The Baca Grande POA v. Cynthia Nelson Saguache County Case*
   *2020C30019* ........................................................................................... 28

*The BGPOA v. Bayardo Sandy Saguache County 2018C30078* .....................................1, 21

*The BGPOA v. Bayardo Sandy Saguache County 2020C30008.* ........................................ 1

### Statutes

18 U.S. Code § 1341 ............................................................................... 29

18 U.S. Code § 1343 ............................................................................... 29

18 U.S. Code § 1621 ............................................................................... 26

18 U.S. Code § 1623(d) ........................................................................... 26

42 U.S. Code § 1983 ............................................................................... 13

42 U.S. Code § 1985 ............................................................................... 31

42 U.S. Code § 3617 ..........................................................................14, 31

C.R.C.P. Rule 407(d)(2) ........................................................................... 32

C.R.C.P. Rule 411 ................................................................................. 33

C.R.C.P. Rule 97 .................................................................................. 20

C.R.C.P.. Rule 121, § 1-15(1)(b) ................................................................. 20

C.R.C.P.. Rule 363 ................................................................................ 22

C.R.C.P.. Rule 411(a) ............................................................................. 11

C.R.S. § 38-33.3-123 (2) ......................................................................... 15

C.R.S. 13-17-102(4) ............................................................................... 19

C.R.S. 13-6-104(1) ............................................................................15, 16

*Colorado Professional Rules of Conduct 3.4* ...................................................... 2

CRCP Rule 362(b) .............................................................................9, 19, 33

D.C.COLO.LCivR 3.2(a) ............................................................................. 13

D.C.COLO.LCivR 3.2(c)(1) ................................................................. 13

F.R.C.P. 16(f)(1)(c) ................................................................. 14, 25

F.R.C.P. Rule 15(a)(2) ................................................................. 15

*U.S. Constitution's Article I, Section 10, Clause I* ................................ 16


Other Authorities

*The Baca Grande Restated Covenants Article 10.11* ............................ 15

# I.      COMPLAINT

1.      This complaint stems from a series of misdeeds leading the Plaintiff to undue duress including the permanent loss of his left shoulder attempting to comply with an impossible to perform County Order; which entailed building a 24' concrete dome through 8000-foot elevation, through a Colorado Winter.

2.      The retaliation started soon after the Plaintiff filed a federal discrimination lawsuit in Colorado on 10/09/2018 Case number 18CV02572.

3.      The 18CV02572-Defendants involved the State of Colorado in two retaliation lawsuits on the same property.  Consequently; the property was being litigated trice; in Saguache County as cases *2018C30078* and *2020C30008*.

4.      Consequently, the State of Colorado violated and continues to violate the Plaintiff's Seventh Amendment.

5.      Collectively, Defendant The Baca Grande Property Owners Association ("Association"), its esquires and Defendants Allen & Curry, P.C. and Moeller Graf, P.C. via their lawyers Defendant Kyle C. Webert (No. 43739) and Defendant Ethan Elliott Zweig (No. 44794) worked together to undermine the Plaintiff's Federal Lawsuit.

6.      The steps taken by the Association and its lawfirms was collectively abuse of process, suborning perjury, overbilling, and blocking Plaintiff's Appeals in state courts.

# II.      Colorado and Association Quid Pro Quo

7.      For a succinct description, the Plaintiff alleges that the Association had an *in-house judge*; ruling 100% in favor of the Association—the former County Judge Anna Nikole Ulrich.  Consequently, it would benefit the Association to present cases in County Court even if the amount of damages exceeded the County Court monetary jurisdiction, because invariably the Association had in stealth—a *in-house* judge.

8.      The rule of law were systemic violated for about 4 years, when the judge would not recuse herself from Association's cases; and the Association's lawyers would for four years systemically add misconducts of the *Colorado Professional Rules of Conduct 3.4 in "Fairness to Opposing Party and Counsel."* Collectively, many counts of abuse of discretion and process.

9.      The Plaintiff will compel Defendant the State of Colorado via "Discovery" to provide the number of cases that Ms. Ulrich did not recuse herself, and the Association lawyers did not ask her to recuse herself.

10.     This is the main reason why Defendant Moeller Graf via its esquire, Defendant Webert, would risk malpractice, filing the retaliations lawsuits, in the wrong monetary jurisdiction (when improvements to the Plaintiff's real property vastly exceeded the county jurisdiction), because the Association member as a judge would keep the civil actions fast, cheap and always victorious.

11.     Ms. Ulrich corrupted the Colorado's 12th District because even if she was asked to recuse herself, Ms. Ulrich could lobby for the Association from the inside.  The appearances of impropriety were: 1) Colorado having a judge as a member of the Association; 2) The Association never losing a case in Colorado Courts; 3) The judges and clerks lining up defendants' hearings or trials on the same day to save the Association attorney traveling costs; 4) Judges building a greater familiarity with the Association's attorney than defendants.

### III.     Colorado's Cover-Up

12.     Plaintiff on 06/11/2021 complained to the Colorado's Court Administrator about Ms. Ulrich's misconducts as an Association *in-house judge* or *de-facto* employee.

13.      Then 19 days later, on 06/30/2021 Ms. Ulrich listed her house for sale, and as of 11/01/2021 Ms. Ulrich was no longer a judge.  Ms. Ulrich's property listing was MLS#

5873546; description included *"Property also offers a 934 sq. ft. concrete* [octagonal] *foundation slab with electrical, installed plumbing and radiant-floor tubing…"*

14.    The MLS listing described another major conflict of interest, because Ms. Ulrich was judging the Association's members for unfinished constructions while she had an unfinished construction herself.

15.    The Association had coercive leverage on the judge to make her spend another $100,000.00 or more.

16.    The MLS listing revealed the quintessence of the *quid-pro-quo* relationship.  The former-judge would rule in favor of the Association and the Association would look away from the former judge's covenants violations.

17.    The Plaintiff was not a judge, the Association demolished his unfinished building on 01/21/2022, as the Plaintiff was appealing the case involving the said construction; consequently, the Defendant Association and its Esquires willfully and premeditatively violated the automatic stay on county case 2018C30078 which now a district case 2022CV1.

18.    The Defendants violated due process, the Plaintiff seeks the cost reconstruction of his unfinished home and punitive damages.

19.    The Plaintiff alleges that the State of Colorado covered up the misconducts, requesting Ms. Ulrich to resign rather than terminate her for misconducts, a resignation would save the State thousands of court hours having to reopen every case that Ms. Ulrich presided and ruled in favor for the Association.

20.    Notwithstanding, millions of dollars for systematic violation of civil rights (under 42 U.S. Code § 1983); thus, abusing all Association Members who had Ms. Ulrich as a judge.

21.    The Association and Ulrich's *quid pro quo* had deeper *joint-nexus* between a private party and the state than the Plaintiff first alleged in Case *18CV02572*.  Therefore, the

*quid-pro-quo* was not only with the Saguache County; but with Colorado Department of Justice.

22.     Ms. Ulrich was an Association member from 02/05/2018 through 08/11/2021; consequently, the former judge had influence on Plaintiff's due process through lobbying from the inside.

### IV.     Another Coercive Pattern—the Rent-A-Cop

23.     For decades the Association wanted to have a police substation because the dispatch time is about 45 minutes to Crestone and Baca Grande grounds.  In similar fashion of having a *quid-pro-quo* judge, the Association had a rent-a-cop.

24.     For nearly two years the Association had hired a criminal[1] at large, Mr. Wayne Clark who was also a former Saguache Deputy. The then cop was *on the take,* because his financial compensation was done under the table; this was possible for three reasons: a) for years the Association does not audit its books, b) the Association's treasurer Ms. Kristen Ecklund used her own house as rental; and c) the Association had a fake job for Mr. Clark's wife Mrs. Fedrica Solano-Clark—director of communications[2] for Baca Grande POA.

25.     Mr. Clark was not an Association member, yet he attended the Association's meeting out of uniform to disperse protests.  Once Mr. Clark attended the POA's meeting to intimidate the Plaintiff, the earsplitting shout of Mr. Clark directed at the Plaintiff was recorded.

---

[1]     CenterPost Dispatch 08/06/2020 reads: *SAGUACHE COUNTY - Former Saguache County deputy Wayne Clark failed to appear at his arraignment July 29 on charges of official misconduct, filed in July 2020 by district attorney Robert Willett. One source close to law enforcement speculated he may have left the state. A warrant has been issued for Clark's arrest. Clark was with the Saguache County Sheriff's Office for close to five years before being relieved of his duties.*

[2]     Source: Mrs. Clark Linked page.

*Sandy v. Colorado et. al. - Complaint*     Page - 4

26.     The Plaintiff was afraid to bring it up to the local Saguache Sheriff, because the Plaintiff was afraid that the Sheriff himself was also on the Association's underground payments.  When it comes to character assassination, a simple roadside stop could have damaged Plaintiff's entire life.  This alliance of convenience ended when the neighbor threatened to sue the County; Deputy Clark's German shepherd police dog attacked him. Then the *on-the-take*, the free housing, and the fake job ended.

### V.     Premeditated Arson of Jarvis' home by the Association

27.     For the Association, character assassination was easy; a criminal police officer doing road stops, and *in-house* judge on the Bench.  On 09/09/2020 the home of Jonathan Jarvis went up in flames.

28.     Although closer, the Association's fire department was the second engine on the scene on 09/09/2020.  Soon after, the house fire, it was described as a meth lab incident and the *Crestone Eagle* on October 2020, the Association's Employee Chrissy Lakish published the house as abandoned; when it was not.

29.     Mr. Jonathan Jarvis and the Plaintiff were both being sued by the Association in Colorado Courts, on the date of the fire, there was a living tenant and the property was at the time of the fire was under pending litigation in *Colorado Court of Appeals Case 2020CA1254* until the following year 01/14/2021.

30.     The Plaintiff alleges a premeditated housefire because the Association had requested the Saguache Commissioners in writing for a waiver for the debris of Jarvis' home to be dumped at Saguache Landfill once it was burned.

31.    On 08/12/2020 both Saguache Commissioners and the Association trespassed in to the property by doing a walk-through[3] and a site visit.

32.    On 08/18/2020 the Saguache Commissioners discussed the burning of Jarvis' home. Regarding the arson, Commissioner Tim Lovato said *"It should have been done a longtime ago."* To which point Association Member and Commissioner Jason Anderson responded[4] *"Well, the Court's been slow, Commissioner."*

33.    While the Association burned Jarvis' home with pending Appeal in Colorado Court, the Association looked away from judge Ulrich unfinished construction.

34.    On 08/18/2020 the Saguache Commissioners granted the Association the waiver to dump the Jarvis' remains; and Jarvis' home burned 21 days later.

35.    For months the Plaintiff requested a copy, the County Administrator Wendi Maez failed to produce a copy of the Association's request for the premeditated arson.

36.    Requests to the County and the Association's esquire failed, no communications were produced.   Through "Discovery," the Plaintiff will compel the Association and the County to produce communications premeditating the arson on Jarvis' home; because the existence of such request, will establish the fact that the Association and the County have been working together to circumvent due process; nonetheless; this joint-nexus was part of the ongoing duress on the Plaintiff. Part of pressure leading to fear and duress having to perform a Court Order through Winter leading to the loss of his shoulder. Criminal on the run, Mr. Wayne Clark, was not the only individual entangled with the Association not to show up to a hearing; former Director and Defendant Hoevers, also did not

---

[3] Source: Saguache County Commissioner's 08/18/2020 Minutes.

[4] Source: Audio Recording of 08/18/2020 Saguache Board of Commissioner's Meeting provided by Saguache County Recorder Trish Gilbert.

show up for a hearing for driving with a suspended driver's license and the irony is that she was arrested by former Deputy Clark. Another arrest warrant was issued on Defendant Hoevers; but it was dismissed by former judge and here as Defendant Ulrich.

### VI.   The Evidence shows the Association as a Criminal Organization

37.     Corruptible is the keyword of most who engage with the Association.

38.     Defendant Hoevers' sudden resignation was reported by *CenterPost Dispatch* on 04/19/2019; she left the Association with no replacement.  The *CenterPost* continued, that Defendant Hoevers accused the Association for not having balanced accounting as far as 2014 and quit; while the Association accused Ms. Hoevers for the disappearing funds.

39.     The *CenterPost* also alluded to the fact that the Association was going to sue Defendant Hoevers. This convoluted history of conflict of interest, arrests, and life on the run is relevant to show the level of the characters running the show. The Plaintiff alleged in federal case 18CV02572; that the Defendant Hoevers exchanged an allegation of bank-fraud (30 years maximum) for a federal perjury (5 years maximum).

40.     Thus, the Plaintiff is suing the United States for considering Defendant Ayla's perjury as the main reason why a federal judge dismissed the Plaintiff Discrimination lawsuit. As it stands, Defendant Hoevers' perjury had a *quid-pro-quo*. Neither the esquires nor federal judge refuted Ayla's perjury as the fundamental basis for case dismissal.

41.     The former Director Hoevers, was not the only one to be arrested by the State, the current Director Connie Estrada was also arrested for driving under the influence.

42.     At the time courtroom hearing was held by Association Member and Defendant Ulrich, a de facto *inhouse-judge;* who did not recuse herself on an individual who could have initiated a violation of covenants for her unfinished construction.

43.     A history of former and current Association managers arrested; and former Association Member and former Judge Ulrich keeping the Colorado's indictments on them as slaps on the wrists.

44.     The burden of proof is different between a civil lawsuit and a criminal indictment, the Plaintiff here alleges a pattern of criminal behavior or the very least willfully violating several steps of due processes; which the Plaintiff was subjected to during the tenure of Defendant Dossenback.

45.     The Association Board is intrinsically bonded on conflict of interest because members are either general contractors or in the real estate business.

46.     The Association had an *inhouse-judge* who did not recuse herself, Colorado is implicated in her lobbying for years.  The Board created a cloud of invincibility towards Members, in other words, the Association Board and its employees were above the law; and mounting duress onto the Plaintiff.

47.     The Association has a history with corruptible individuals, then requested the Commissioners a quasi-free pass to burn a Member's house; while his tenant was still residing on it on the day of the fire; a home that was commonly known for being partially built with recycled tires.

### VII.     State of Colorado's Series of Violations of Civil Rights

48.     Thus, not surprising that the Association would violate automatic stay under C.R.C.P. Rule 362(b) and demolish the Plaintiff unfinished construction while looked away from Defendant Ulrich's.

49.     Around the same period the Association has had a criminal at large as a rent-a-cop, two directors arrested while employed, an *inhouse-judge,* and the Association has not lost a single case in Colorado courts.

50.     This is the background of the Association's swagger; meanwhile, Colorado's 12th District Courts preoccupied in lining up the calendar so the Association on attorney's traveling costs.

51.     The comradery between the State and the Association goes further.

52.     The Plaintiff alleges several abuses of process since 2018; and one-sided courtesy to the Association. Generally, the Plaintiff's *right to be heard* has been systemically suppressed by: 1) Suppressing the Plaintiff from speaking; 2) creating a discriminatory and unilateral sanction for when the Plaintiff may file a motion; and 3) by having the Association's esquires and Court mutually not deny or disregard many pleadings or allegations.

53.     For instance, a recent example: in the County Court Order of 10/15/2021; the Court alleged that the Plaintiff removed a boat from his property by pointing out to an 11/07/2019 Order (by several wrong dates).  In a *Motion to Set Aside* on 12/07/2021; the Plaintiff alleged that the Court has been suffering from cognitive decline *inter alias*: 1) Even writing an Order in chambers the judge could not get the dates correctly, even on the Order's Heading; and 2) a boat was never litigated in: a) Association's Original Complaint, b) Association's claims for Contempt Citation, nor c) in the 11/07/2019 Judgement.

54.     In fact, the Plaintiff never owned a boat; and nobody spoke of a boat.

55.     Because both Court and Association's Esquire ignored the Plaintiff's pleadings, on 01/14/2022 Status Conference, the Plaintiff once again brought the issue back, this time verbally: *"Your Honor there is no boat. There is no boat in this action, your Honor. There is never been a boat."* The Court simply replied *"Mute him!"* Once again, even verbally in the 01/14/2022 Status Conference; neither the Court nor the Association addressed the fact that the Court is in cognitive decline and did not deny that a boat was never part of the action.

56.     The Association had two teams of esquires one team in State Courts and another team in Federal Court, while the Plaintiff with no legal training was defending his property from discrimination—*pro-se.*   While the Association's esquires in two different venues, claimed that the cases were independent matters; the esquires were actually mimicking the behavior of misconduct pointed by Colorado Supreme Court against Esquire Leta Holden.

57.     The Colorado Supreme Court described Esquire Holden used the State Venue to obtain a ruling to dismiss the Federal Venue Case. Although the Association Lawyers working as a single-team do not claim to be mimicking Ms. Holden's behavior; nonetheless, federal venue esquire, Mr. Ethan Zweig, travelled from Denver for five hours to attend the County Trial that started 9:00 AM.

58.     Federal Esquire Zweig was also the first to request the County Trial's transcript. When the County Judgment was published on 11/07/2019, Esq. Zweig, in the similar fashion as Esq. Holden dismissed the Federal Venue, by filing a *Motion for Summary Judgement* and attaching the County Order a few hours after the Order was published.

59.     Also attached on *Motion for Summary Judgement* was Defendant Hoevers' perjury which remains on record as the deciding factor for the Plaintiff's federal dismissal. Faced with two losses the Plaintiff had no choice; but to continue to build his home through Winter as he was ordered in 11/07/2019; thus, falling from the roof in a Colorado Winter; suffering from comminuted fracture shoulder; days away from a Declared a State Emergency.

60.     Next the Association in conjunction with the State of Colorado Courts blocked the Plaintiff's Appeal. The C.R.C.P.. Rule 411(a) has a line *"The bond shall be approved by the judge or the clerk."* So, on 11/07/2019 in a recorded phone call the Plaintiff asked the

Clerk for what monies would be necessary to file a bond and a notice of appeal. The phone call was also necessary to avoid wasting an 84 miles roundtrip.

61.     The Clerk set the bond at zero, because the Judgment was a nonfinancial order. Even providing transcript and recording to District Judges of the phone call of the 11/07/2019; the Defendants blocked the Plaintiff's Appeal with (three) supersedeas bonds exceeding the monetary discretion of the County Court at the time $15,000.00.

62.     After multiple vacated unlawful orders and two judges the Colorado Supreme Court denied to hear the Plaintiff's Appeal. Consequently, case 2018C30078 stands on a blocked supersedeas bonds asking the Plaintiff to place $27,250.00 (thanks to fraudulent attorney's fees); also, above the Court's discretion.

## VIII.    Complaint's Summary

63.     A Herculean task is to describe four years under 10,000 words. In sum, a history of corruptible individuals describing two arrested managers, a criminal at large, a sudden retirement of a judge, several years of unaudited balance sheets. Recently, the *Crestone Eagle,* February 2022 edition describes the Association's financial in dire-straits.

64.     Overall; Defendants succeeded in suppress the Plaintiff's right to be heard, the right to appeal, and had the Plaintiff's federal discrimination suit (dismissed on a perjury).

65.     The jury should simply ask these questions:

a)  Would the federal case be dismissed without Hoevers' perjury?

b)  Would Hoevers commit perjury if she did not have to exchange it for Association to look away on her embezzlement?

c)  Would the Plaintiff still have his shoulder if he was not obligated to work through Winter?

d) Would the Plaintiff have a proper appeal if the bond set by the clerk, was not blocked by the Plaintiff and two judges?

e) Did the Plaintiff have a fair contempt citation Hearing when neither the Court nor the Association ever explain why the judge wrote some many things wrong including a boat that was never on trial?

## IX.    STATEMENTS OF CLAIMS FOR RELIEF

## X.    CLAIMS FOR RELIEF

### 42 U.S. Code § 1983 - Civil Action for Deprivation of Rights

(The Plaintiff against The United States, the State of Colorado, Hon. Zollars, Hon. Rodriguez, Hon. Olsen, Hon. Hopkins; the Property Owners Association)

66.    **COUNT-1: The United States' Violation of D.C.COLO.LCivR 3.2(a) and 3.2(c)(1) "Notice of Related Cases:** The USA via its employees Hon. Moore and Hon. Magistrate Tafoya failed to enforce D.C.COLO.LCivR 3.2(a). The Association and its esquires attended two scheduling conferences in bad-faith and withheld knowledge of a related county case 2018C30078 in two federal scheduling conferences for 158 days creating a defect on the Scheduling Order. The U.S. Employees did not apply the local rules equally on the parties, and created undue stress onto the Pro-Se Plaintiff, who had to defend two lawsuits in different venues and still build a house.

67.    **COUNT-2: The United States' Violation of F.R.C.P. 16(f)(1)(c) Scheduling Conferences:** The USA via its employees Hon. Moore and Hon. Magistrate Tafoya failed to equally enforce F.R.C.P. 16(f)(1)(c) on Association's and its esquires.  The USA Employees via Hon. Moore and Hon. Magistrate willfully failed to improve the quality of the trial and did

not allow the Plaintiff a more thorough preparation according to F.R.C.P. Rule 16.  Mounting on to Plaintiff's burden and accumulative stress for the next two years.

68.   **COUNT-3: The United States' Violation of 42 U.S. Code § 3617:** The USA via its employees Hon. Moore failed to equally enforce 42 U.S. Code § 3617; by not even bother to read [emphasis added] the Plaintiff's Response to Defendants' Summary Judgement; thus the Court underlined declared in writing on 02/05/2020 Order when the Court wrote; *"Plaintiff has failed to explain how § 3617 applies to this case, and it is not the Court's role to be his advocate."* The Plaintiff alleges that the Court did not read *Plaintiff's Response Summary Judgement,* because on his *"Response,"* on 26/11/2019; Paragraph 16 Page 15, the Plaintiff quoted Attorney General Loretta Lynch and how §3617 also applies to HOA's coercion. Further Hon. Moore wrongfully wrote: *"The sections cited* [§§ 3617, 3603, 3604, 3605, or 3606] *pertain to discrimination in the sale or rental of housing, in residential real estate-related transactions, and in the provision of brokerage services."* Diametrically opposed to what the Plaintiff quoted USAG Loretta Lynch on the same Paragraph 16; *"Section 3617 does not necessarily deal with a discriminatory housing practice, or with the landlord, financer or brokerage service guilty of such practice.  It deals with a situation where no discriminatory housing practice may have occurred at all because the would-be tenant has been discouraged from asserting his rights, or because the rights have actually been respected by persons who suffer consequent retaliation.  It also deals with situations in which the fundamental inequity of a discriminatory housing practice is compounded by coercion, intimidation, threat or interference."   [Quoted from Smith v. Stechel* **by U.S. A.G. Loretta Lynch on 07/15/2016; on page 5; of "United States of America's** Statement of Interest**"** *(docket#90) in Arnal v. Aspen Case 1:15-cv-01044-WYD-MJW]*

69.    **COUNT-4: The United States' Violation of F.R.C.P. Rule 15(a)(2):** The USA via its employees Hon. Moore failed to guarantee justice by not enforcing F.R.C.P. Rule 15(a)(2). Pursuant to F.R.C.P. Rule 15(a)(2) *In all other cases, a party may amend its pleading only with the opposing party's written consent <u>or the court's leave. The court should freely give leave when justice so requires</u>.* Instead of justice, the Federal Court allowed Hoevers' perjury to remain the deciding factor on its 02/05/2020; 15 days before the Plaintiff lost his left shoulder.

70.    **COUNT-5 and 6: The State of Colorado Violation of its own C.R.S. § 13-6-104(1):** Colorado via Hon. Rodriguez in case 2018C30078 and via Hon. Zollars in Cases 2018C30078 and 2020C30008 violated State Statute on monetary jurisdiction. To Dismiss the case on 04/18/2019 the Plaintiff presented the cost of two unfinished buildings to Hon. Rodriguez at $120.833.24 when monetary jurisdiction was a $15,000.00 and Plaintiff presented the cost of finished garage to Hon.Zollars using the Saguache County Tax Assessor bill assessing the property in suit at $34,275.00 when court's monetary jurisdiction was $25,000.00.  Colorado via its judges violated its statutes—twice.

71.    **COUNT-7: The State of Colorado Violation of C.R.S. § 38-33.3-123 (2):** Colorado violated State Statute for what is commonly known as a "grandfather clause" via Hon. Rodriguez by three years.  The facts are undisputed by parties that the construction began on 05/21/2013; it is also it is undisputed by parties that the *Restated Covenants Article 10.11,* requires the building structure to have a roof, walls, doors and windows within 18 months from commencement.  Thus, 18 months from 05/21/2013 concluded on 11/21/2014; consequently; the statute of limitation on legal action under C.R.S. § 38-33.3-123 (2); for an unfinished construction commenced in 11/22/2014 and expired on 11/21/2015. Therefore, Colorado violated C.R.S. § 38-33.3-123 (2); by three years allowing the Case 2018C30078 to proceed

without statutory window wasting Colorado's taxpayers' funds for the next four years perhaps more, because the case is now pending as District Appeal 2022CV1.

72.     **COUNT-8, 9 and 10: The State of Colorado Violation of its own C.R.S. 13-6-104(1):** Colorado via Hon. Hopkins; Hon. Olsen case 2019CV21 violated State Statute on monetary jurisdiction, by issuing supersedeas bond in excess of County's jurisdiction, first Count  at $42,282.45 on 12/20/2019; second Count at $20,000.00 on 02/10/2020; and third Count on 04/10/2020 at $27,250.00; all three Orders were in violation of C.R.S. 13-6-104(1); all Orders designed to block Plaintiff's Appeal.

73.     **COUNT-11: The State of Colorado Violation of its own C.R.S. 13-6-104(1):** Colorado Supreme Court refused to hear case 20SC623 regarding the same the appeal of Case 2019CV21 on the matter of C.R.S. 13-6-104(1); therefore, unlawful supersedeas remains on record exceeding the 2018 version of C.R.S. 13-6-104(1).

74.     **COUNT-12: The State of Colorado Tortious Interference of Contract.** Colorado via Hon. Rodriguez in case 2018C30078, interfered with the contract set by the Plaintiff and Association. Colorado violated *U.S. Constitution's Article I, Section 10, Clause I* (Contract Clause). Colorado also violated federal precedented in *Fletcher v. Peck, 10 U.S. 87 (1810).* On 05/05/2015 the Association invoiced and demanded payment for a garage building permit at $29.30. On 05/18/2015 the Association cashed Plaintiff's check #10027 which check-memo read *"garage permit;"* then in 2019 the Association lied in Court and claimed that the building permit was never issued and wanted to cancel the contract between parties after holding the money in cash for four years.  Colorado biased judge interfered in a sanctity of private contract; later, in 2020 the Association sued the Plaintiff in Case 2020C30008 for building a garage.

75.     **COUNT-13 & 14: The State of Colorado Collateral Estoppel and Preclusion.  One Count** when Colorado via Hon. Rodriguez in case 2018C30078, the matter of the garage to relitigated twice, because the Plaintiff was already suing the Association for not allowing the garage to be built and sent a copy of the federal case 18CV2572; further, Hon. Rodriguez interfered with the 2015-contract between parties by cancelling the garage permit. Consequently, the garage matter was on record and Hon. Rodriguez allowed the Association to see it as a new issue to bypass the one-year statute of limitations because the issue of the garage was knowable since 2015; but the Association claimed to be a 2019 matter. **Second Count** on Colorado, via Hon. Zollars, dismissing preclusion claim on the 2015-garage issue and allowed to be relitigated as a new matter for the third time on 01/30/2020; inflicting duress 21 days before the Plaintiff lost his shoulder.

76.     **COUNT-15: The State of Colorado; 11-07-2019-Order Impossible to Perform.** Colorado via Hon. Rodriguez issued an Order impossible for the Plaintiff to perform; nonetheless, Plaintiff attempted and lost his left shoulder.  On 09/10/2021, Hon. Zollars advocating for the Association, claimed that the 11-07-2019-Order did not limit the Plaintiff to hire a crew. Hon. Zollars' statement is fallacious, because even with a working crew, to build a home at 8000 feet; exclusively out of concrete would be impossible because concrete freezes overnight. The Alamosa Regional Airport webpage says; *"The cold season lasts for 3.0 months, from November 24 to February 23, with an average daily[5] high temperature below 44°F."* Consequently, the 11/07/2019-Order would force the Plaintiff as an employer to expose a crew to hazard conditions from wind gust frozen surfaces, snowfall, hail, and ice. The 11/07/2019-Order was not only impossible for a single person to perform; but would have

---

[5]     https://weatherspark.com/y/145651/Average-Weather-at-San-Luis-Valley-Regional-Airport-Colorado-United-States-Year-Round

turned the Plaintiff into an employer obligated to violate OSHA standards for safety. Therefore, Colorado via Hon. Rodriguez, issued on 11/07/2019 an Order impossible to perform—period.

77.     **COUNT-16: The State of Colorado; 11-07-2019-Order Impossible to Comply.** Colorado via Hon. Rodriguez issued an Order impossible for the Plaintiff to comply. On 09/10/2021 Hon. Zollars and the Association acknowledged on record, and transcripts will validate that the 11/07/2019-Order is impossible to comply, because the *"order"* as described would also require the removal of a permitted well.  Therefore, Colorado via Hon. Rodriguez, issued on 11/07/2019 an Order impossible to perform or comply.

78.     **COUNT-17: The State of Colorado; Court's Discriminatory Order.**  Colorado via Hon. Zollars on 07/17/2020 issued a partial and discriminatory Order advocating for the Association. Hon. Zollars ordered; only the Plaintiff was required to file a single page leave detailing all issues before filing any motion.  Instead of justice, this discriminatory order was designed to suppress Plaintiff and to save the Association's litigation costs. Colorado's partial order was a violation of Equal Rights under the law.

79.     **COUNT-18: The State of Colorado Order violated the Right to Be Heard.**  Colorado partial order via Hon. Zollars on 07/17/2020 created an extra step to suppress the Plaintiff's *Right to Be Heard*; the single page leave would not allow the Plaintiff to detail the issues in one single page and bring it to motion.  Consequently, Colorado oppressed the opportunity to be heard even in a partial tribunal. *Mullane v. Central Hanover Bank (1950).*

80.     **COUNT-19: The State of Colorado Violated its C.R.C.P. Rule 306(b)(2)** Colorado failed to grant a motion to dismiss because of the Association's late filing.  The Association neither asked for more time to respond nor filed an exculpatory leave to explain the events leading to the late filing; simply, the Association violated C.R.C.P. Rule 306(b)(2) requiring

case's dismissal.   Nonetheless, Hon. Zollars abused discretion by advocating for the Association and making excuses for the Association's esquire when esquire gave none. On her 09/14/2020-Order when the Association offered no excuses to the court and writing, the Court wrote: *" …3.The court finds the delay in filing was <u>an unintentional mistake</u> on the part of plaintiff's counsel. … …5. Dismissal of a case is <u>too harsh</u> a sanction for an unintentional mistake."*   Colorado's via its judge was biased and did not enforce the law.

81.     **COUNT-20: The State of Colorado Violated its C.R.C.P. Rule 59(j)** Colorado waited 584 days.  *A court loses jurisdiction when it fails to rule on a post-judgment motion within 60 days. The language of section (j) is mandatory and provides that the district court shall rule within 60 days or the motion shall be automatically denied. Arguelles v. Ridgeway, 827 P.2d 553 (Colo. App. 1991).*  Fraudulent Attorney fees were filed on 11/22/2019 and finally granted 1 year, 7 months, 7 days later.   Colorado deems post-trial motions denied after 63 days. Colorado violated its due process by violating its law and precedent in law.

82.     **COUNT-21: The State of Colorado Violated its C.R.S. 13-17-102(4)** Colorado denied the Plaintiff a hearing on attorney's fees—twice. When the Plaintiff requested in 11/29/2019 and again in 07/23/2021. Attorney's fees were awarded were limited to fees connected to the trial, instead, Association's esquires padded the fees with items not awarded on judgement. Consequently, the State of Colorado, on record, participated in cementing the Attorney's mail fraud and wire fraud *(see infra)* on denying the Plaintiff's right to object motion attorney's fees via hearings.

83.     **COUNT-22: The State of Colorado Violated its C.R.C.P. Rule 121, § 1-15(1)(b).** Colorado via Hon. Hopkins on case 2019CV21 failed to allow Plaintiff (then Appellant) 21 days to respond to Association's Motion provided in C.R.C.P.. Rule 121, § 1-15(1)(b). Instead Hon. Hopkins granted the supersedeas in two days on 12/20/2019 violating said rule; further

ordering an excessive supersedeas bond of $42,282.45 based on fraudulent attorney's fees which is also in violation of C.R.S. 13-6-104(1) already mentioned in ¶-72 Count #8 *supra.*

84.     **COUNT-23: The State of Colorado Violated its** C.R.C.P. Rule 97**.** Colorado via Hon. Hopkins and Hon. Olsen on case 2019CV21; both judges failed to follow Rule 97. On 01/27/2019, Plaintiff filed a motion to disqualify Hon. Hopkins as per Rule 97. Then on 01/29/2019 Hon. Hopkins claimed that the motion for recusal was moot because she was no longer on case *2019CV21.* Then 12th District Clerk Hollie G. Wheelwright told Plaintiff that Hon. Hopkins asked via email to Hon. Olsen to step aside, because she wanted to reenter the case bypassing Rule 97.  Hon. Hopkins abused her discretion twice on 02/10/2020: 1) she had no legal authority to preside on the case; and 2) the Order exceeded C.R.S. 13-6-104(1) once again. All of these mounting pressures onto the Plaintiff who continue to work through Winter, falling from the roof 10 days later. Even after showing evidence to Colorado Court Administrator, judges suffered no consequences for covering up abuse of discretion on Rule 97.

85.     **COUNT-24: The State of Colorado Violated its C.R.C.P.. Rule 97.** Colorado via Hon. Zollars violated Rule 97; when it comes to partiality.  Hon. Zollars in case 2020C30008 as well as case 201830078 violated Rule 97 multiple times by making personal and unsubstantiated remarks against the Plaintiff, verbally and in writing. The unqualified remarks were generally *"*[Mr. Sandy] *is taking advantage of the system."* The Plaintiff asked Hon. Zollars to name the advantages; the Court refused. Hon. Zollars on 08/03/2021-Order escalated the unqualified remarks to *"If the defendant continues to file motions in bad faith… ..."* On 08/12/2021 Plaintiff filed *"Defendant's Motion for Clarification 08/03/2021 Order."* Hon. Zollars never justified why motions under due process were in bad-faith. Hon. Zollars launched several *ad hominem* against the Plaintiff from 2020 through 2022; yet never held

the Plaintiff in direct contempt to court and never named the causes for *advantages* or the causes for *bad-faith.*

86.    **COUNT-25: The State of Colorado Violated its C.R.C.P. Rule 97.** Colorado via Hon. Zollars violated Rule 97; when it comes to advocating for a party in suit—the Association. In 2021 the Association started three contempt citations against three Members. Mr. Jeffrey Winsett, *Case 2017C30004;* Mr. Robert DeMers *Case 2018C30034,* and Mr. Bayardo Sandy *Case 2018C30078.* The Colorado records will show that the Association was not interested in any of the *defendants' financials* which included Plaintiff Sandy. However, Hon. Zollars took upon herself to discover Plaintiff's financials when the Association was not even bothered; asked the Plaintiff to file a pauperis motion, to provide bank statements and IRS filings. Over two years, Hon. Zollars was prosecuting from the Bench, turning to the Association multiple times and using coded words, *"the Court will entertain if the Association wants this* or *the Court will entertain if the Association wants that[6].* Also in writing, the Hon. Zollars advocated for the Association. For instance, when the Plaintiff filed a motion to reconsider under his civil rights, Hon. Zollars transmitted coded words on her 08/03/2021-Order; "*If the defendant continues to file motions in bad faith, <u>the court will entertain a motion for sanctions from the plaintiff</u>.*"

87.    **COUNT-26: The State of Colorado Discriminated Sanctions against Plaintiff.** Colorado via Hon. Zollars discriminated against the Latino Plaintiff and corroborated with the Association. All Defendants: Winsett, DeMers and Sandy were charged with contempt citation and ordered do appear on the same day. This time employing a Colorado Court, the Association was able to apply its discriminatory agenda once again. On Defendant's Winsett and DeMers the Association sought daily sanction of $25.00 until their lots met compliance.

---

[6] Paraphrased over multiple hearings, from 2020 through 2022.

Giving no explanation why the Anglo Saxon Caucasians were required to pay $25.00 per day; whereas the Association sought that the Latino Plaintiff Sandy, a daily $50.00. The Association was on record once again, with selective punishment on the Latino defendant, doubled to the Anglo-Saxon Caucasians Members. The State of Colorado via its employee corroborated on placing discriminatory sanctions.

88.     **COUNT-27: The State of Colorado Colorado violated its C.R.C.P. Rule 363** On 06/11/2021 the Plaintiff gave noticed to Colorado's Court Administrator that Hon. Judge Zollars has been displaying early sign of Alzheimer's. Colorado provided neither follow up nor substitution. Although, the Plaintiff is a layman, he recognized the decline in family members, stemming from fogginess of the mind when the judge needed to recall names of people, items, laws, and a high level of irritability.  The decline was already detailed in Plaintiff's *Motion to Set Aside* on 12/07/2021; in which the Plaintiff wrote on ¶ 4, page 19; *"4) In furtherance of irritability and mental decline, the 09/10/2021 hearing during a Contempt Citation Hearing, the Court's video will show the Court with catatonic or uncontrollable head shaking for a long duration while mustering anger or frustration towards the Defendant's answers* [herein as Plaintiff].*"   Inter alias,* the 10/15/2021-Order had the judge mislabeling the 2018C30078 Judgement by six different dates, including the Box Title incorrectly. Furthermore, Hon. Zollars made references to a boat; but a boat was never in dispute by the parties.  The Association did not dispute on its *Response* anything that the Plaintiff said about Hon. Zollars' mental decline on 12/07/2021 motion, instead, the Association resorted to *ad hominem* and called the Plaintiff as sexist. Because neither the Association nor Hon. Zollars addressed the Plaintiff's averments about the mental declined; the averments from motion remained unanswered.  On 01/14/2022 Status Conference, the Plaintiff once again brought the issue back, this time verbally: *"Your Honor there is no boat. There is no boat in this action, your*

*Honor. There is never been a boat."* The Court simply replied *"Mute him!"* Consequently, Colorado Judicial Court relies on Hon. Zollars conflict of interest to recuse herself, because it would be tantamount to resignation as a judge. *"Disability" construed. "Disability" includes anything that renders a judge incapable of performing his legal duties… … "Disability", under this rule, includes resignation. Faris v. Rothenberg, 648 P.2d 1089 (Colo. 1982).*

## XI.    IN FURTHER CLAIMS FOR RELIEF

### 42 U.S. Code § 1983 - Civil Action for Deprivation of Rights
### 42 U.S. Code § 1985 (2) - Conspiracy – Obstruction of Justice

(The Plaintiff against the State of Colorado, Moeller Graf, P.C., Kyle Christian Webert, Ms. Anna Nikole Ulrich; the Baca Grande Property Owners Association and Stephen Dossenback)

89.    **COUNT-28: The State of Colorado Joint Nexus with Association.**  During most of the tenure of Defendant Dossenback, the Association had coercive power over Ms. Ulrich as a county judge, for she had an unfinished construction; the Association looked away. Further, the Association during the same time raise the dues and never audited its balance sheets, which could suggest a deeper *joint-nexus.*  The Plaintiff alleges that Colorado is engaged in a cover up of four years of *joint-nexus* between the State and the Association.  The timing is circumspect; on 06/11/2021, the Plaintiff complained to the State; then on 06/30/2021 (or 19 days), Ms. Ulrich's home was placed for sale, and by 11/01/2021 her house was sold. In a short span, her ties between the Association and Colorado were conjointly severed.  The Plaintiff will compel the State of Colorado and the Association to produce communications between the Association and the former judge Ulrich, as well as communications between

former judge and current judges that also participated in the Plaintiff's cases, as relevant to conspiracy to obstruct justice and violations of the Plaintiff's civil rights.

## XII.   IN FURTHER CLAIMS FOR RELIEF

**42 U.S. Code § 1983 - Civil Action for Deprivation of Rights**
**42 U.S. Code § 1985 (2) - Conspiracy – Obstruction of Justice**
**42 U.S. Code § 3617 - Interference, coercion, or intimidation**

(The Plaintiff against Moeller Graf, P.C., Kyle Christian Webert, Allen & Curry, P.C.; Ethan Elliott Zweig; the Baca Grande Property Owners Association; Ayla Hoevers, and Stephen Dossenback)

90.   **COUNT-29: The Named Defendants' Abuse of Process Retaliation Suit.**  Federal Esquires and State Esquires worked in stealth and in tandem to undermine the Plaintiff's right to seek justice.  When it was opportune; the attorneys claimed to be apart; but when it was suitable they claimed the opposite.  Both, Esq. Webert (State) and Esq. Zweig (Federal) used findings of different venues to quash the Plaintiff rights.  Esq. Zwieg attaching the County Court Judgement of 11/07/2019 to the *Federal Motion for Summary Judgement* and Esquire Webert attaching 02/05/2020 Federal District Order in County Court. Mimicking the steps described in the misconduct of Esquire Leta Holden (detailed *supra* from ¶-56 to ¶-58); a retaliation suit designed with intentional infliction of emotional distress.

91.   **COUNT-30: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process on Monetary Jurisdiction Case 2018C30078.** Under the leadership Defendant Dossenback, the Association and its Esquires had the discretion to start a lawsuit either in County Court or District Court of Colorado. The mechanics of the wrong-jurisdiction were already described *supra* on Counts 5 and 6.  However, the County Court provided the

*Sandy v. Colorado et. al. - Complaint*    Page - 23

incentive of having the Association's *inhouse* judge selected (detailed *supra* from ¶-7 to ¶-22); to expedite the litigation for the Association.

92.      **COUNT-31: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process Monetary Jurisdiction Case 2020C30008.** Under the leadership Defendant Dossenback, the Association and its Esquires had the discretion to start the action in the District Court.   However, the County Court provided the incentive of having the Association's *inhouse* judge; and the limits of the jurisdiction were already described *supra* on Counts 5 and 6.

93.      **COUNT-32 and 33: The Association, Mr. Dossenback, and Allen & Curry, P.C.; Abuse of Process**; by withholding knowledge of the County Court Parallel Case 2018C30078 in Federal Court on two scheduling conferences in violation of local rules on need to reveal parallel cases and detailed above on Count-1 against the USA. Thus, **Count #32** abuse of process and withholding information on proposed scheduling conference on 01/16/2019 [18CV02572 Event 16] and again **Count #33**, schedule conference submitted on 01/25/2019 [18CV02572 Event 20].   Thus, creating a defect on F.R.C.P. 16(f)(1)(c); withholding this knowledge would entailed that the pro-se litigant would have to face two seasoned team of lawyers; actions therefore designed with intentional infliction of emotional distress on Plaintiff.

94.      **COUNT-34: The Association, Mr. Dossenback, Ms. Ayla Hoevers, Allen & Curry, P.C.; Abuse of Process**; by introducing Defendant's Hoevers perjury with *Defendant's Motion for Summary Judgment on 11/07/2019*. The *quid pro quo* between Defendant Hoevers and the Association on committing perjury was already detailed from ¶-38 to ¶-40. Introduction of perjury which was designed with intentional infliction of emotional distress on Plaintiff.

95.     **COUNT-35: The Association, Mr. Dossenback, Ms. Ayla Hoevers, Allen & Curry, P.C.; Esq. Theodore A. Wells, Abuse of Process** by not recanting the perjury under 18 U.S. Code § 1623(d).   Defendant's Hoevers' perjury with *Defendant's Motion for Summary Judgment*. The advantages of *quid pro quo* between Defendant Hoevers and the Association on perjury; detailed from ¶-38 to ¶-40 as well on ¶-40 as Count #4.   As a matter of law, under 18 U.S. Code § 1621, a perjury submitted in deposition is a crime; as such perjury was crafted by the Defendant Hoevers under oath and introduced in federal court.   Given the opportunity to recant the perjury on record, neither the Association, nor their Esquires recanted the perjury under 18 U.S. Code § 1623(d).   The U.S. District Court cited "Hoevers' perjury" as instrumental in ruling against Plaintiff. By not recanting the perjury, the Defendants continued with intentional infliction of emotional distress.

96.     **COUNT-36: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process Without Statutory Window on Case 2018C30078.** The Association's Esquires are no neophytes to the law, yet under the leadership Defendant Dossenback, the Association and its Esquires pushed a suit with a statutory window expired by three years, already detailed on ¶-71 as Count #7.   Pushing a suit to cause intentional infliction of emotional distress on Plaintiff.

97.     **COUNT-37: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process Without Statutory Window on Case 2020C30008.** The Association's Esquires are no neophytes to the law, yet under the leadership Defendant Dossenback, the Association and its Esquires pushed a suit with a statutory window expired on the garage structure by three years, because the Association demanded payment for the garage permit in May of 2015 and cashed Plaintiff's check for $29.30, already detailed on ¶-74 as Count

#12. Pushing a second suit with no statutory window was to cause intentional infliction of emotional distress on Plaintiff.

98.   **COUNT-38: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process asking the State of Colorado to Interfere with a Contract.** The Association's Esquires abused of process was to ask the State of Colorado to interfere and dissolve the garage permit contract with the Plaintiff in 2019 to turn around and sue him in 2020 for building a garage.  The Association cashed the check and never returned the money to the Plaintiff, as for consideration changing hands the Association never returned the Plaintiff's money as currency as it was paid to the Association in 2015.

99.   **COUNT-39: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process on Collateral Estoppel and Preclusion.**   The Plaintiff on record on 04/18/2019 disclosed: 1) the construction of the garage structure, 2) which was validated by a 2017 Saguache County Permit, and 3) by a check cashed in 2015 by the Association; nonetheless, the Association and its esquires abused of process as a new matter in January of 2020 as case 2020C30008. Pushing a new suit to create a larger burden on Plaintiff having to answer to three actions; 2019CV00021; 18CV02572 and the garage as 2020C30008 as a pro-se litigant. The Plaintiff was under severe stress with three pending actions and intentional infliction of emotional distress which led him to losing his shoulder on 02/20/2020.

100.   **COUNT-40: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Committed Fraud on Plaintiff by Backdating and Padding Attorneys' fees.** The Association's Esquires abused of process by backdating and padding its attorney's fees against the Plaintiff. The actionable wire fraud and actionable mail fraud by padding the attorney fees remain unanswered as a crime committed by the Association and its esquires in Colorado Courts (see *supra* ¶-82, Count #21).  Defendants committed similar crimes suing

other Members.  In sum, after the Association was granted a judgment against a Member, its esquires backdate by padding the unreasonable attorney fees and commit fraud using the judgment as a coercive form to collect; a fraud which can be presented to the losing party (or to the IRS as a loss, on ongoing 10 years of unaudited balance sheets).  For instance, former Association Member Cynthia Nelson received an attorney fees motion rigged with frauds; (for brevity, only one example).  Ms. Nelson started to consolidated her lots with the County on 04/30/2019; after approved by Saguache Board of Commissioners on 07/02/2019; her lots were finally consolidated on 07/30/2019 without any liens or legal encumbrances because Ms. Nelson was paying her Association dues on time.  Nonetheless, after being granted a judgment in 2021, the Association claimed on its Attorney's fees that on *item #7615 on 12/27/2019 CW* [Defendant Kyle Christian Webert] reviewed Nelson's 101 pages of documents including the lots consolidation which was already settled five months earlier; yet charging Ms. Nelson $737.50.  <u>Why was it fraud by padding legal fees and backdating charges from two years earlier?</u>  a) The $737.50 was never posted in Ms. Nelson's Association Dues for 2019; b) the $737.50 was also not posted against her Association Dues for 2020; and c) the item #7615 of $737.50 was never a claim of action against Nelson on Saguache County Case[7]. The hubris is strong because the Association and its esquires have been doing them for years.  The Association and its esquires are criminals which were able to collect money on the scheme by presenting the fraudulent charges as a coercive condition to allow her home to be sold through the title company. Conversely are the padding and the backdating charges presented by the Association and its Esquires on 11/22/2019 against the Plaintiff. The padded charges added to $2,445.00 from 07/18/2018 through 10/24/2018 which included esquire's *opinions* in Plaintiff's 2018 federal suit at $567.00.  Opinions of esquires

---

[7] *The Baca Grande POA v. Cynthia Nelson Saguache County Case 2020C30019*

who never filed a notice of appearance in federal venue.  Further, esquire's opinions of the 2018-federal suit were neither part of the Claims in Case 2018C30078 nor part of its judgment.  These crimes are on record in Colorado, and these crimes under 18 U.S. Code § 1341 and 18 U.S. Code § 1343 do not have to be completed to be a crime, but just attempted. In the attorney's fees presented against the Plaintiff were actionable attempt to defraud, but against Ms. Nelson were actionable and accomplished frauds, because funds changed bank accounts. This is a civil suit, but the State of Colorado is allowing the Association to complete several crimes against its Taxpayers for the last several years.  The Association has had a pattern of behavior or a documented history of an *inhouse*-judge, a criminal as rent a cop, the premeditated arson of Jonathan Jarvis' home, and its legal teams backdates and pads the motion for attorney fees to have the State of Colorado to corroborate on their racketeering. The facts are: a) The Defendants misrepresented a material fact in the attempt to defraud, b) They had knowledge that they were misrepresenting the truth, c) the misrepresentation was made purposefully, with the intent of coercing the Plaintiff, and d) the misrepresentation used U.S. Mail and online wire transmission to the Court.

101.   **COUNT-41: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process on Bad-Faith During a Mediation Meeting.**  The 10/03/2019 during a Court mandated Alternative Dispute Resolution "ADR;" solicited by the Association.  The Association premeditated the ADR in bad-faith, because it used the ADR as a deposition instead of a mediation in good-faith. The ADR took place in another city 60 miles away— Salida-CO.  Upon showing the progress of his construction during the ADR, Defendant Webert stepped out of the room to tell Association employees to take picture of the Plaintiff's home construction.  The pictures were taken while Defendants Dossenback, Webert and Plaintiff Sandy sat on the table in good-faith, and yet the photos were presented as evidence

in an *Amended Complaint* presented 2 business day later or on 10/07/2019.  Willfully violating the sanctity of the ADR in bad-faith.

102.   **COUNT-42: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Abuse of Process on Asking for Defendant's Imprisonment During a Pandemic.**  The 04/19/2021 the Defendants filed a Motion for Contempt Citation against the Plaintiff; asking for sanctions, imprisonment or both.  The language of imprisonment was made official by the Clerk on 04/27/2021 alluding to criminal implications.  During normal times, imprisonment is a stressful threat; but during a global pandemic without vaccination it is a death threat. Furthermore, then, the local Saguache County Jail had been designated a Covid hot-spot and on lockdown.  The language in the motion was designed to cause fear and have the Plaintiff skip the hearing at the fear of possible death of Covid while in jail. The County docket will show that on 06/11/2021 the Plaintiff filed *"Motion for Appointment of Counsel by the Court to Respond to Undisclosed Criminal Implications from Clerk on 04/27/2021 and by the Plaintiff on 04/19/2021."* Just to put in perspective, the Defendants wanted the Plaintiff to go to prison for not finishing a house with a broken shoulder during a global pandemic. The Plaintiff had to seek the aid of local health-clinic for psychological counseling and sleeping aid medicine. The Plaintiff was under severe stress, afraid of imprisonment and death by Covid when there was no need for such excessive language. The Defendants' willful motion was designed with intentional infliction of emotional distress.

103.   **COUNT-43: The Association, Mr. Dossenback, Esq. Webert and Moeller Graf Applied Discriminatory Sanctions Against the Plaintiff.**   The Plaintiff alleges that the discrimination continued through sanctions; as already detailed on ¶-87 Count #26.  The Defendants sought discriminatory sanctions against the Plaintiff by charging 200% than his Anglo-Saxon and Natural Born Citizens of the United States.  The Defendants justified in

writing to the Court, that the sanction was not discriminatory; but because the Plaintiff was diligent in filing motions [instead of the low educated] Members who were despondent; thus, cheaper to prosecute.  Consequently, the Defendants placed on record that the sanctions were in spirit revengeful and not discriminatory, because unlike his neighbors, the Plaintiff stood up for his right of due process, while his neighbors were hopeless to the bullying they took. Consequently, in light of the Defendants' admission in writing that the Plaintiff was deserving of revenge thus punished at 200%, such statement qualifies as the quintessence of coercion and intimidation while using the legal system as "a utensil." Thus, deserving attention under 42 U.S. Code § 3617 covering "Interference, coercion, or intimidation;" as well as 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights; the Defendants abused process in *joint-nexus* with the State of Colorado.

## XIII.   IN FURTHER CLAIMS FOR RELIEF

### 42 U.S. Code § 1983 - Civil Action for Deprivation of Rights
### 42 U.S. Code § 1985 (2) - Conspiracy – Obstruction of Justice

(The Plaintiff against Moeller Graf, P.C., Kyle Christian Webert; the Baca Grande Property Owners Association; Stephen Dossenback; Sheriff Dan Warwick, Saguache County, Diego Martinez, Dale William Halley, Jane E. "Sugandha" Brooks, Connie M. Estrada, James Vanderpool, and Chris William Whybrow)

104.  **COUNT-43: The Named Defendants on unlawful destruction of the Plaintiff's Property in Violation of C.R.C.P. Rule 362(b) and Rule 407(d)(2).**  The Plaintiff alleges that named Defendants conspired in the unlawful demolition of his unfinished construction.  For one, the level of racial discrimination is so high that neither Mr. Winsett nor Mr. DeMers who appeared on the same day as the Plaintiff for a Contempt Citation Hearing have not had their

homes destroyed.  Further, the discrimination was cemented with former Member and former Judge Ulrich, who was never sued by the Defendants nor had her unfinished construction demolished; which remains unfinished as of the filing of this action.  The local publication, *Crestone Eagle* on page 10 of the February 2022 edition published *"Baca Property Owner's Assoc. Finished 2021 Operating in the Red."*  This means that the level of animosity and hatred is so great that the Association spent money that it did not have to demolish a construction instead of using funds to pay bills and staff.   On three opportunities to the Court, a) via motion for sanctions; b) verbally on 09/10/2021; and c) orally on 01/14/2022; the Association requested the Court just to impose monetary sanctions against the Plaintiff and no demolition of his construction.   On two occasions: 09/10/2021 and 01/14/2022, Hon. Zollars advocated for the Association by asking Defendant Webert, *"Are you sure the Association doesn't want to enter the property and take the dome down?"* [paraphrased] Both instances the Esquire denied the option to demolish; thus, forfeiting the right to demolish; because demolition was not a sanction sought under C.R.C.P. Rule 407(d)(2) neither in writing nor in oral motion in court.   Nonetheless, the Association without disclosing to the Court and to the Plaintiff had placed a worksheet with the Saguache Sheriff on 12/14/2021 to accompany the Association to destroy the unfinished building on 01/21/2022.  *The Fourteenth Amendment prohibits the states from depriving any person of life, liberty, or property, without due process of law.*  On 12/07/2021 the Plaintiff filed a *Motion to Set Aside or Vacate* the 10/15/2021 Order, *inter alias,* Hon. Zollars displaying lack of diligence or mental decline for there was no boat in the action, and claims under *Modern Mootness Doctrine,* because via motion, and two hearings the Association altered its original complaint because it did not want to demolish the Plaintiff's construction.  The Court and Clerk finally served the Plaintiff with an order of denial on 01/14/2022; consequently, pursuant to C.R.C.P. Rule 411, the Plaintiff

had two weeks to file an appeal on his *motion to set aside*, thus until 01/28/2022.   On 01/21/2022 as the Plaintiff was filing an appeal, the named Defendants were conspiring together to destroy his construction. Together the named Defendants violated the Plaintiff's 14th Amendment, his civil rights of due process and C.R.C.P. Rule 362(b) affording an automatic stay until the party appeals or stay an order.  Whether Defendants foresaw that the Plaintiff would prevail on appeal, the destruction of the Plaintiff's property was rushed and violated state and federal laws.  According to Colorado Department of Public Health, the Defendants sought the demolition without a Colorado State permit for demolition, and without an asbestos inspection prior to the demolition; therefore, the Defendants also endangered their own employees and others creating an unsafe working condition under OSHA Regulations. Further, provided with 5-weeks request before trespassing the property, the Sheriff a Saguache County employee, neither bothered to validate with the Clerk (50 feet away), if the judgement for demolition based on 11/07/2019 Order was still valid nor if the Plaintiff had just cause to file a motion to stay or appeal.

## XIV.   Compensatory and Punitive Damages

105.   The Plaintiff seeks direct damages of his unfinished construction at $150,000.00 for the unlawful demolition of his unfinished home. In 04/18/2019; the Plaintiff submitted the price of 199.7 linear foot of foundation at $54,108.64, the goal was to provide the County Court a rough estimate that the property vastly exceeded its $15,000.00 jurisdiction.   However, $150,000.00 in damages is more accurate to 2022 prices. The LBS national average prices submitted in 04/18/2019 excluded:

a)  Installed electric conduits and electric outlets placed inside and along 200' foundation and walls.

b)  2"x 24"x 200' of frost protection around the foundation (Formular® by Corning).

    c) Two circular stair cases to south room

    d) 10 erected concrete columns including columns with a curved form.

    e) Two installed metal entry fire proof doors.

    f) One 6' x 5' window installed on the east wall.

    g) One quarter of concrete wall erected on the first floor.

    h) A 24' foot tall dome with 40' diameter interlaced with reinforced 1/2" rebars

    i) One wooden mast supporting the center in support of the dome.

106. As for compensatory damages for a loss of a left shoulder, the Plaintiff requests the compensation of $3,000,000.00 collectively from all Defendants except the United States.

## XV.   Prayer for Relief

107. A) Hon. USAG Merrick Garland does not allow the perjury of Defendant Hoevers to go unpunished in Federal Courts.

108. B) Hon. USAG have federal judges in Colorado retrained and not to look away from a perjury as the basis of ruling against a party.

109. C) Hon. USAG finds that the US DOJ should observe Stare Decisis by *§3617* and conclude that *Sandy v. Baca Grande 18CV02572* was exponential more coercive than *Arnal v. Aspen* leading to a broken shoulder and a destruction of property and reopen the case due to reversible error and judicial oversight.

110. D) That the state of Colorado not be allowed to systematically deny due process in their Courts.

111. E) That the State of Colorado may not interfere with a contract especially when a financial consideration already changed hands in 2015 (referring to the garage permit).

112. F) That the Court or the FBI will not allow the State of Colorado to engage in a cover-up of dismissing one of its judges especially when the *joint-nexus* endured for years.

113.   G) Stop Defendants and their Lawyers form engaging in multiple abuse of process.

114.   H) Forward Association's and its esquires wire-fraud and mail fraud for backdating and padding attorney fees for many years to proper criminal prevention agencies.

115.   I) The Baca Grande Association area is larger than Washington DC; with size comes contempt; thus, asking the Court to dissolve the Association; which will stop the future years of corruption and discrimination, (with the bonus that Members in the flat lands will stop subsidizing neighbors in the mountainous inclines that failed to meet Colorado Department of Transportation Road Standards).

116.   J) The Plaintiff's dome equivalent financial reconstruction adjusted for inflations.

117.   K) The compensation for the permanent loss of his left shoulder.

118.   L) Punitive damages from all Defendants according to the Jury's discretion for years of suffering intentional infliction of emotional distress.

## XVI.   Demand For a Jury Trial

119.   Plaintiff respectfully demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

Respectfully submitted on 02/14/2022.

Bayardo Reno Sandy
609 Heatherbrea Road, Crestone Colorado 89147 (physical)
P.O. Box 81922 Las Vegas NV 89180 (Mailing)
Phone: 310-929-0321  —  baysandy@yahoo.com

*Sandy v. Colorado et. al. - Complaint*     Page - 34

## Certificate of Compliance in Suing Governments

The Plaintiff Bayardo Reno Sandy, Plaintiff in *Sandy v. Colorado* et al, states that Pursuant to Colorado Revised Statute Rule 24-10-109(1); the Plaintiff gave notice to sue Defendant the State of Colorado on 05/11/2020; *inter alias* for systemic violation of his civil rights under Title 42 U.S.C. § 1983; including the loss of his left shoulder.  Further,

The Plaintiff Bayardo Reno Sandy, Plaintiff in *Sandy v. Colorado* et al, states that Pursuant to 28 U.S. Code § 1346(b)(1); the Plaintiff gave notice to sue Defendant the United States of America on 10/20/2021; *inter alias* for systemic violation of his civil rights under Title 42 U.S.C. § 1983; including the loss of his left shoulder.  The Office of Hon. USAG has neither contacted the Plaintiff regarding settlement for his torts nor for violations of his civil rights; but notified the Plaintiff that his claims were forwarded to the U.S. Court Administrator.

Respectfully submitted on 02/14/2022.

Bayardo Reno Sandy
609 Heatherbrea Road, Crestone Colorado 89147 (physical)
P.O. Box 81922 Las Vegas NV 89180 (Mailing)
Phone: 310-929-0321  —  baysandy@yahoo.com

**Statement of Related Cases**

Pursuant to D.C.Colo.LCivR 3.2, Plaintiff, hereby submits this statement of Related Case identifying prior lawsuit being appealed in Saguache District Court that has common facts and claims and has a least one party in common with the above captioned case.

RELATED CASES

Saguache District Court cases number 2022CV1 and 2022CV2.  The cases involve common facts and claims to the above captioned case and involves two of the same parties: The Baca Grande Property Owners Association and Plaintiff Bayardo Sandy.  This statement shall be attached to the Complaint to notify the Defendants pursuant to D.C.Colo.LCivR 3.2, once the summonses are served.

Respectfully submitted on 02/14/2022.

Bayardo Reno Sandy

609 Heatherbrea Road, Crestone Colorado 89147 (physical)

P.O. Box 81922 Las Vegas NV 89180 (Mailing)

Phone: 310-929-0321  —  baysandy@yahoo.com

**Certificate of Compliance**

Pursuant to D.C.COLO.LPtR 17 guidelines for Complaint's structure.  I, the Plaintiff Bayardo Sandy, certifies that this Complaint has a word count of 9989 words; and the body of the complaint employed Arial type fonts, with a 12-point font.

Respectfully Submitted on 02/14/2022

Bayardo Reno Sandy

609 Heatherbrea Road, Crestone Colorado 89147 (physical)

P.O. Box 81922 Las Vegas NV 89180 (Mailing)

Phone: 310-929-0321  —  baysandy@yahoo.com